UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ELDRIDGE J. HARMON                                    CIVIL ACTION

VERSUS                                                        NO. 14-1403

STATE OF LOUISIANA ET AL.                      SECTION "E"(2)

## REPORT AND RECOMMENDATION

Plaintiff Eldridge J. Harmon filed the captioned suit pro se and in forma pauperis against the Vermilion Parish Clerk of Records; two private corporations, which he identifies only as Precision Holding and St. Mary Energy; and the State of Louisiana Secretary of the State Archives. Harmon alleges that "agencies representing the State of Louisiana have acted in concert to deny and deprive plaintiff of protected constitutional statutory rights." Record Doc. No. 1 (Complaint at p. 1) (emphasis added).

Specifically, plaintiff's complaint asserts the following:

> My great-grandfather whose name was Samuel N. Huntsberry was donated a land grant for agricultural purposes by President Theodore Roosevelt which was recorded in Vermilion Parish dated April 29, 1893 and recorded in the office of Department of the Interior dated December 18, 1907. That transaction was also deposited in the General Land Office according to an Act of Congress on the 25th day of May, 1908. In the Vermilion Parish court of records, at Abbeville, Louisiana, the Huntsberry family [name?] was changed 4 (four) times through fraud and schemes.

> To the best of my recollection, sometimes (sic) in the early 1980's, I attempted to tour that land that I heard belonged to my ancestors and ran across a sign which read "Restricted Area" and an oil drilling rig was set in place and they were drilling – so I went in another way and viewed the land.

> On the oil well identifies those that are trespassing on the Huntsberry land are: Precision Holding . . . ; and TACO . . . ; and St. Mary Energy . . . . At the present

time, they are still pumping oil and gas that they have not gotten permission to drill in the first place.

Plaintiff demands the following relief:

[W]henever the defendants are ordered to compensate plaintiff, Eldridge J. Harmon and co-heirs, plaintiff asks the court to have such monies placed into an interest bearing account . . . with plaintiff being the only person to draw from that account. Such a deposit will protect plaintiff from further fraud and swindles as plaintiff's social security . . . have been exposed many times to the extent that plaintiff does not know who have (sic) access to that personal number.   Plaintiff is trying to protect my identity, I demand that this court also permit plaintiff to create a non-profit account in the name of plaintiff's founder and Dean of the Institute of Devine Metaphysical Research whose name is Henry C. Kinley and the name of the account should read:  "The Henry C. Kinles (sic) Fortune Foundation" and only [plaintiff] is to be allowed to draw from that account.  Such an account is to be tax-exempt and protected from fraud and swindlers.

Id. (Complaint at pp. 2-3).

Although plaintiff requested in his complaint that he be permitted to supplement his complaint "for purpose of serving TACO; and to incorporate others who have violated plaintiff's constitutional rights," his amended complaint filed in this matter on July 1, 2014, named no new defendants.

Harmon appears to seek both injunctive relief and compensatory damages.  In his original complaint, he states that "whenever defendants are <u>ordered</u> <u>to</u> <u>compensate</u> plaintiff," he "will invest moneys [apparently sought to be obtained via this lawsuit] to our president to help with health care . . . and to create jobs for the deprived unemployed." Id. (Complaint at p. 3) (emphasis added).  Plaintiff's amended complaint "demands that this court <u>restrain</u> the defendants from continuing to profit off the Huntsberry land without affording plaintiff and co-heirs . . . <u>due</u> <u>compensation</u>" and

-2-

asserts that he will "present further proof as to who are (sic) operating on said land while other residents are also trespassing . . . ." Id. (Complaint at p. 4) (emphasis added); Record Doc. No. 7 (Amended Complaint).

About one month after filing, the case was referred to me by the presiding district judge for purposes of evaluating whether it should be dismissed under 28 U.S.C. § 1915(e)(2). Record Doc. No. 17.

## ANALYSIS

I.     STANDARDS OF REVIEW

A pro se complaint filed in forma pauperis shall be dismissed "at any time" if the court determines that it is frivolous, fails to state a claim on which relief may be granted or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). The law "'accords judges . . . the authority to dismiss a claim based on an indisputably meritless legal theory.'" Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question

of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate . . . ." Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992).  An in forma pauperis complaint which is legally frivolous, fails to state a claim or seeks monetary relief against a defendant who is immune from such relief may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2)(B).

In this case, construing plaintiff's submissions broadly,[1] I find that he attempts to state the following four causes of action, two under federal law and two under state law: (1) a federal claim under 42 U.S.C. § 1983 for violation of his constitutional rights, apparently for deprivation of property rights without due process, Record Doc. No. 1 (Complaint at p. 4); (2) a federal civil claim under the Racketeer Influenced and Corrupt Organizations ("RICO") statute, 18 U.S.C. § 1962(c), based  upon defendants' allegedly fraudulent interstate commerce activities, Record Doc. No. 8 (Motion for TRO at p. 2); (3) a fraud claim under state law, id. at p. 3; and (4) a state law trespass claim, Record Doc. No. 7 (Amended Complaint at p. 1).

I find that plaintiff's federal claims must be dismissed under 28 U.S.C. § 1915(e), either as legally frivolous because they lack an arguable basis in law, or under Rule 12(b)(6), or because they seek relief from defendants who are immune.  The complaint, as amended, fails to state a cognizable federal claim under the broadest reading and seeks

---

[1]The court must "liberally construe briefs of pro se litigants and apply less stringent standards to parties proceeding pro se than to parties represented by counsel," Smith v. Lonestar Constr., Inc., 452 F. App'x 475, 476 (5th Cir. 2011) (quotation omitted); Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994), and I have done so in this case.

damages from two defendants who are immune from such relief.  In addition, no valid basis for federal jurisdiction over plaintiff's state law claims has been stated in the complaint, and the state law claims must therefore be dismissed with<u>out</u> prejudice.

II.     <u>FEDERAL CLAIMS</u>

(A)     <u>Two (2) Defendants Are Not State Actors</u>

Harmon's federal Section 1983 claims against defendants Precision Holding and St. Mary Energy are based on his allegations that defendants are responsible for the deprivation of certain constitutional rights arising from their unauthorized and uncompensated use of his property for oil and gas production activities.  No such liability conceivably exists under Section 1983 against these two defendants.

Specifically, Precision Holding and St. Mary Energy cannot be liable to Harmon under Section 1983 because under no circumstances can these private business entities and/or their general counsel be considered state actors as a matter of law for Section 1983 purposes in light of the allegations made by plaintiff in this complaint.  <u>See</u> <u>Polk Cnty.</u> <u>v. Dodson</u>, 454 U.S. 312, 325 (1981); <u>Small v. Dallas Cnty.</u>, 170 F. App'x 943, 2006 WL 925500, at *1 (5th Cir. 2006) (citing <u>Hudson v. Hughes</u>, 98 F.3d 868, 873 (5th Cir. 1996); <u>Mills v. Crim. Dist. Ct. No. 3</u>, 837 F.2d 677, 679 (5th Cir. 1988)).

"'Federal question jurisdiction under [28 U.S.C.] § 1331 extends to cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial

question of federal law.'" <u>Williams v. EDCare Mgmt., Inc.</u>, No. 1:08-CV-278, 2008 WL

4755744, at *5 (E.D. Tex. Oct. 28, 2008) (quoting <u>Frank v. Bear Stearns & Co.</u>, 128 F.3d

919, 922 (5th Cir. 1997)).  Section 1983 provides in pertinent part:

> Every person who, <u>under color of any statute, ordinance, regulation,</u>
> <u>custom, or usage, of any State</u> or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen . . . to the deprivation of any
> rights, privileges, or immunities secured by the Constitution and laws, shall
> be liable to the party injured in an action at law, suit in equity, or other
> proper proceeding for redress[.]

42 U.S.C. § 1983 (emphasis added).  Because plaintiff fails to state a cognizable Section

1983 claim upon which federal question subject matter jurisdiction might be based, his

federal claim must be dismissed.

Only state action in violation of an individual's constitutional rights may serve as

the basis for a cognizable Section 1983 claim.  Although Harmon has named the State

of Louisiana Secretary of the State Archives as a defendant, the transactions upon which

he bases his claims arise from purely private commercial activities.  Plaintiff makes no

allegations in this lawsuit against any individual state officials acting in any capacity.

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right

secured by the Constitution or laws of the United States <u>and</u> (2) demonstrate that the

alleged deprivation was committed by <u>a person acting under color of state law</u>."  <u>James</u>

<u>v. Tex. Collin Cnty.</u>, 535 F.3d 365, 373 (5th Cir. 2008) (quotation omitted) (emphasis

added).  Action taken under color of state law for purposes of Section 1983 requires a

defendant's use of power "possessed by virtue of state law and made possible only

because the wrongdoer is clothed with the authority of state law" and when the defendant is engaged in the "performance of official duties."  United States v. Causey, 185 F.3d 407, 414, 415 (5th Cir. 1999); accord Bryant v. Military Dep't, 597 F.3d 678, 687 (5th Cir. 2010); Townsend v. Moya, 291 F.3d 859, 861 (5th Cir. 2002); see also Brennan v. Stewart, 834 F.2d 1248, 1257 (5th Cir. 1988) (A violation of the Fourteenth Amendment right to equal protection "occurs only when the government treats someone differently than others similarly situated.") (emphasis added).

"As a threshold matter, for a plaintiff to state a viable claim under § 1983 against any private defendant, . . . the conduct of the private defendant that forms the basis of the claimed constitutional deprivation must constitute state action under color of law." Morris v. Dillard Dep't Stores, Inc., 277 F.3d 743, 747 (5th Cir. 2001) (citing Lugar v. Edmondson Oil Co., 457 U.S. 922, 924 (1982)). A private actor is subject to constitutional liability only when "such a close nexus between the State and the challenged action exists that seemingly private behavior may be fairly treated as that of the State itself." Id. at 747-48 (citing Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001)).

Thus, to assert a claim for a violation of Section 1983 in the instant case, Harmon must show that defendant's actions are "fairly attributable to the state."  West v. Atkins, 487 U.S. 42, 49 (1988); accord Wong v. Stripling, 881 F.2d 200, 202 (5th Cir. 1989). "[A] finding of state action is justified only where it can be said that the state is

-7-

responsible for the specific conduct of which the plaintiff complains.  A state is not responsible for a private party's decisions unless [the state] has exercised coercive power or has provided such significant encouragement . . . that the choice must in law be deemed to be that of the state." Id. (quotations and citations omitted).

Because these two defendants are private business entities engaged in private commercial activities in which the only alleged involvement of state agencies is merely ministerial, they are not state actors. There is no allegation of coercion through state power or significant encouragement by the State sufficient to deem the private defendants' actions to have been that of the State.  Thus, plaintiff's Section 1983 claims against Precision Holdings and St. Mary Energy have no basis in federal law and must be dismissed for failure to state a cognizable claim.

(B)    Two Defendants Are Immune

Harmon names the State of Louisiana Secretary of the State Archives and the Vermilion Parish Clerk of Records as defendants. He specifically alleges that these "agencies representing the State of Louisiana have acted in concert to deny and deprive plaintiff of protected constitutional statutory rights."  Record Doc. No. 1 (Complaint at p. 1) (emphasis added).  It is entirely unclear from Harmon's allegations how these public agencies might conceivably be liable based upon the purely private commercial transactions described in his complaint.  However, even if these allegations could somehow be construed to assert a valid claim, 28 U.S.C. § 1915(e)(2)(B)(iii) provides

that, as to any case filed in forma pauperis, "the court shall dismiss the case at any time if the court determines that – . . . the action . . . seeks monetary relief against a defendant who is <u>immune</u> from such relief."  (Emphasis added).

The State of Louisiana is immune from suit in federal court under the Eleventh Amendment.  Sovereign immunity under the Eleventh Amendment bars actions for monetary relief in federal court against a State or its agencies unless the State has consented to be sued. U.S. Const. amend. XI; <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 100 (1984); <u>Alabama v. Pugh</u>, 438 U.S. 781, 782 (1978); <u>Williams v. Dallas Area Rapid Transit</u>, 242 F.3d 315, 318 (5th Cir. 2001).

Generally, the State of Louisiana has not waived its immunity or consented to the exercise of federal judicial power in civil actions against it.  La. Rev. Stat. Ann. § 13:5106(A); <u>Delahoussaye v. City of New Iberia</u>, 937 F.2d 144, 147 (5th Cir. 1991). Thus, in each unsanctioned instance of federal suit, the State or its agency must affirmatively waive its Eleventh Amendment immunity.  <u>Port Auth. Trans-Hudson Corp. v. Feeney</u>, 495 U.S. 299, 305 (1990); <u>Earles v. State Bd. of Certified Pub. Accountants</u>, 139 F.3d 1033, 1038 (5th Cir. 1998); <u>Stem v. Ahearn</u>, 908 F.2d 1, 4 (5th Cir. 1990).

Plaintiff has specifically alleged that these two defendants are "agencies representing the State of Louisiana."  Because the State of Louisiana is immune from suit and has not waived its immunity, plaintiff's claims against these agencies must also be dismissed with prejudice.

In addition, the Vermilion Parish Clerk of Records, who has been named as a defendant in this matter based apparently upon the Clerk's official responsibility for the subject public records concerning real property interests, is insulated from liability based upon an additional immunity doctrine.  The federal Fifth Circuit and other circuit courts have extended the doctrine of judicial immunity to clerks of court.  Small v. Dallas Cnty., 170 F. App'x 943, 943 (5th Cir. 2006); Clay v. Allen, 242 F.3d 679, 682 (5th Cir. 2001); Rogers v. Brintrager, 841 F.2d 853, 856 (8th Cir. 1988); Eades v. Sterlinske, 810 F.2d 723, 726 (7th Cir. 1987).  Clerks of court have a "narrower ambit of immunity than judges and prosecutors," Tarter v. Hury, 646 F.2d 1010, 1013 (5th Cir. 1981), but they "'have absolute immunity from actions for damages arising from acts they are specifically required to do under court order or at a judge's direction, and only qualified immunity from all other actions for damages.'"  Clay, 242 F.3d at 682 (quoting Tarter, 646 F.2d at 1013).  "[Q]uasi-judicial immunity shields lower officials, such as clerks, who implement judicial orders."  Boston v. Lafayette Cnty., 744 F. Supp. 746, 750 (N.D. Miss. 1990) (citations omitted), aff'd, 933 F.2d 1003 (5th Cir. 1991).

As discussed above, the Clerk of Vermilion Parish 15th Judicial District Court and his deputies, officials with ministerial responsibility for public filings related to property, are entitled to immunity as to plaintiff's claim for damages.  The action about which Harmon complains, the recordation and/or filing of public records concerning ownership, possession and/or use rights in real property, is exclusively a function of the clerk's

office. Plaintiff's written submissions indicate that the Clerk's actions were ministerial and taken pursuant to the clerk's official recordation duties.  Under these circumstances, in addition to the sovereign immunity discussed above, the Clerk and his deputies are protected by an additional immunity doctrine from Harmon's claim for damages, which must be dismissed as legally frivolous, for failure to state a claim and because it is asserted against a defendant who is immune from such relief.   28 U.S.C. § 1915(e)(2).

(C)     Complaint Fails to State a Civil RICO Claim

The federal criminal code contains the following civil remedy as a distinct component of the RICO statute:  "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States District Court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee . . . ." 18 U.S.C. § 1964(c) (emphasis added).

To prove a violation of 18 U.S.C. § 1962(c), plaintiff must show that (1) an enterprise existed that affected interstate commerce, (2) defendant was associated with the enterprise, (3) the defendant participated in the conduct of the enterprise's affairs and (4) the participation was through a pattern of racketeering activity.  United States v. Phillips, 664 F.2d 971, 1011 (5th Cir. Unit B 1981), overruled in other respects based on a rule amendment, as stated in United States v. Huntress, 956 F.2d 1309 (5th Cir. 1992). The term "enterprise" is defined broadly to include any "group of individuals associated

in fact." 18 U.S.C. § 1961(4).  A "pattern of racketeering activity" is "at least two acts" indictable under an enumeration of state and federal criminal laws contained in 18 U.S.C. § 1961(1).  R.A.G.S. Couture, Inc. v. Hyatt, 774 F.2d 1350 (5th Cir. 1985) (citing 18 U.S.C. § 1961(5)).

Assuming for present purposes that Harmon's complaint, construed broadly, makes allegations sufficient to state the first three essential elements set out above, it is clear that his complaint fails completely to allege a "pattern of racketeering activity" of the type required in the RICO statute.  The complaint wholly fails to allege the essential elements of any one – much less two –  of the crimes enumerated in Section 1961(1). Specifically, the complaint makes garden variety civil fraud allegations, but does not make allegations sufficient to state violations of any of the particularized federal fraud, theft or property crimes, see, e.g., 18 U.S.C. §§ 659, 1341, 1344, 1351, 1957, constituting "racketeering activity" as defined in the RICO statute.

Under these circumstances, Harmon's complaint fails to state a civil RICO claim upon which relief could be granted because it fails to allege an essential element of such a claim as to which he would bear the burden of proof at trial.

III.    STATE LAW CLAIMS:  NO JURISDICTION

In the absence of any viable federal claims which might provide a basis for this court to exercise its supplemental jurisdiction over pendent state law claims, 28 U.S.C. § 1367(a), plaintiff must establish an independent basis for this court's limited

jurisdiction, the existence of which this court must examine and satisfy itself at all times. Subject matter jurisdiction "is nonwaivable and delimits federal-court power . . . . Subject-matter limitations on federal jurisdiction . . . keep the federal courts within the bounds the Constitution and Congress have prescribed.  Accordingly, subject-matter delineations must be policed by the courts on their own initiative even at the highest level." Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583 (1999) (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."[2])); accord Ashcroft v. Iqbal, 556 U.S. 662, 671 (2009).  Even if "neither party raises the issue of subject matter jurisdiction, this court must consider jurisdiction sua sponte." Equal Emp't Opportunity Comm'n v. Agro Distrib., LLC, 555 F.3d 462, 467 (5th Cir. 2009).

It is equally axiomatic that Harmon, as the plaintiff who invokes the court's jurisdiction, bears the burden to show the basis for subject matter jurisdiction. Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994); Vantage Trailers, Inc. v. Beall Corp., 567 F.3d 745, 748 (5th Cir. 2009).  "In evaluating jurisdiction, the district court must resolve disputed facts without giving a presumption of truthfulness to the plaintiff's allegations." Id.

---

[2]The quoted language is the current version of Rule 12(h)(3), which was amended in 2007 to make changes that are "stylistic only."  Fed. R. Civ. P. 12, official comment (2007).

The basic statutory grants of federal-court subject-matter jurisdiction are contained in 28 U.S.C. §§ 1331 and 1332.  Section 1331 provides for "[f]ederal-question" jurisdiction, § 1332 for "[d]iversity of citizenship" jurisdiction.  A plaintiff properly invokes § 1331 jurisdiction when she pleads a colorable claim "arising under" the Constitution or laws of the United States.  She invokes § 1332 jurisdiction when she presents a claim between parties of diverse citizenship that exceeds the required jurisdictional amount, currently $75,000.

Arbaugh v. Y & H Corp., 546 U.S. 500, 513 (2006) (citing Steel Co., 523 U.S. at 89);

(quoting Bell v. Hood, 327 U.S. 678, 682-83 (1946)) (footnote omitted).

In this case, insofar as he asserts state law claims, Harmon's complaint must be dismissed under Fed. R. Civ. P. 12(h).  For the reasons discussed above, plaintiff's claims fail to establish federal question jurisdiction under either Section 1983 or any other federal constitutional basis as to which his state law claims might be subject to this court's supplemental jurisdiction.  It is also clear from plaintiff's submissions that diversity of citizenship jurisdiction over his state law claims does not exist.  Diversity jurisdiction exists only when the claims in the complaint are between citizens of different states, and when the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.  28 U.S.C. § 1332(a).

"It has long been hornbook law, applied by courts at all levels of the federal judiciary throughout the nation, that whether federal diversity of citizenship jurisdiction exists is determined by examining the citizenship of the parties at the time the action is commenced by filing the complaint with the court as prescribed by Federal Rule of Civil Procedure 3.  The Supreme Court has stated this principle several times."  13E Charles

Alan Wright, Arthur R. Miller & Edward H. Cooper, <u>Federal Practice and Procedure</u> § 3608 at pp. 340-54 (West 3d ed. 2009) (citing <u>Grupo Dataflux v. Atlas Global Group, L.P.</u>, 541 U.S. 567 (2004); <u>Freeport-McMoRan, Inc. v. KN Energy, Inc.</u>, 498 U.S. 426 (1991)) (emphasis added).

The law is long established that, when federal jurisdiction is based on diversity of citizenship, <u>complete</u> <u>diversity</u> must exist between <u>all</u> adverse parties in the action; <u>i.e.</u>, plaintiff's citizenship must be diverse from the citizenship of each defendant.  <u>Lincoln Prop. Co. v. Roche</u>, 546 U.S. 81, 89 (2005) (citing <u>Strawbridge v. Curtiss</u>, 7 U.S. 267, 267 (1806)); <u>Breaux v. Dilsaver</u>, 254 F.3d 533, 536 (5th Cir. 2001).

Although the court's docket sheet currently lists Harmon as having a Texas address, the original complaint clearly identified him as a citizen of Louisiana at the time the suit was filed.  Record Doc. No. 1 at p. 3.  Several of his subsequent submissions continued to make that representation.  Record Doc. Nos. 7 at pp. 3-4; 9 at p. 1; 10 at p. 1.  Two defendants, the Vermilion Parish Clerk of Records and State of Louisiana Secretary of the State Archives, are also identified as citizens of Louisiana.  Record Doc. No. 1.  (Complaint at p. 1, 3-4).  Thus, there was no <u>complete</u> diversity of citizenship in this case at the time it was filed.

Even if Harmon's current Texas address, which he provided to the court about one month after filing his original complaint, Record Doc. No. 11, could be considered  his place of citizenship for jurisdictional purposes, complete diversity of citizenship between

all plaintiffs and all defendants still would not exist.  For diversity of citizenship purposes, business entities like corporations and limited liability companies are considered citizens of both the state of their incorporation and the state where their principal place of business is located.  28 U.S.C. § 1332(c)(1).  Independent research by my staff on the publicly available website of the Commercial Division of the Louisiana Secretary of State indicates that defendant Precision Holdings LLC was incorporated in Nevada and has its principal place of business in Texas, rendering Precision and plaintiff non-diverse, if plaintiff's place of citizenship was deemed to be Texas.

In addition, diverse citizenship of the parties is only one of <u>two</u> separate requirements to establish subject matter jurisdiction in this court under 28 U.S.C. § 1332.  Specifically, Harmon fails to allege the requisite $75,000.00 amount in controversy to support diversity jurisdiction.  No specific dollar amounts alleged to have been lost are mentioned in Harmon's complaint or amended complaint.   Record Doc. No. 1, Complaint; Record Doc. No. 7, Amended Complaint.  These deficient allegations fail on their face to assert the jurisdictional amount threshold of $75,000.00.  The facts alleged, including for example the allegation of plaintiff's receipt of a check "in the amount of $2.90 labeled 'For royalties,'" Record Doc. No. 10 at p. 1, clearly "do not support a finding of the jurisdictional minimum."  <u>Morris v. Elec. Mobility, Inc.</u>, No. 03-1096, 2003 WL 21664726, at *1 (E.D. La. July 15, 2003).

Any supplemental jurisdiction that may have existed over plaintiff's state law

-16-

claims based upon his original assertion of federal question claims also fails to supply a legitimate basis for this court's exercise of subject matter jurisdiction.  A district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."  Id. § 1367(c)(3).  The court's determination whether to exercise supplemental jurisdiction is guided by "both the statutory provisions of 28 U.S.C. § 1367(c) and the balance of the relevant factors of judicial economy, convenience, fairness, and comity that the Supreme Court outlined in Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350-51 (1988), and United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966)."  Batiste v. Island Records, Inc., 179 F.3d 217, 227 (5th Cir. 1999).  The statutory considerations are whether (1) the claim raises a novel or complex issue of state law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.  28 U.S.C. § 1367(c).

> Although the Fifth Circuit's
>
> "general rule" is to decline to exercise jurisdiction over pendent state law claims when all federal claims are dismissed or otherwise eliminated from a case prior to trial, this rule is neither mandatory nor absolute.  Thus, while the district court's dismissal of the [plaintiff's] federal claims provides a powerful reason to choose not to continue to exercise jurisdiction, no single factor is dispositive in this analysis.

Batiste, 179 F.3d at 227 (quotations and citations omitted); accord Certain Underwriters

at Lloyd's, 461 F.3d 568, 578 (5th Cir. 2006).  The district court must make its decision "in light of the specific circumstances of the case at bar."  Batiste, 179 F.3d at 227 (quotation and citation omitted).

In the instant case, plaintiff's federal claims against all defendants must be dismissed for the reasons discussed above.   The factors of judicial economy, convenience, fairness and comity weigh in favor of declining supplemental jurisdiction over his state law fraud and trespass claims.  First, as noted, no federal claims will remain in the case if this recommendation is accepted.  Second, comity favors dismissing the state law claims and letting the state courts handle them (if plaintiff decides to pursue them) because of Louisiana's interest in adjudicating claims concerning real property within its borders and brought under its laws.  Third, because the state law claims have not been addressed at all in this court and this court is not particularly familiar with them, judicial economy does not weigh in favor of maintaining jurisdiction.  Finally, fairness and convenience are equal whether the claim is brought in state or federal court.

"Unadjudicated pendant [sic] state law claims must be dismissed without prejudice to allow the plaintiff to refile in state court when a district court dismisses the federal claims serving as the basis for its jurisdiction and elects not to exercise supplemental jurisdiction over the state law claims."  Brown v. Miss. Valley State Univ., 311 F.3d 328, 334 n.6 (5th Cir. 2002).  Thus, Harmon's state law claims should be dismissed without prejudice.

IV.    PENDING MOTIONS

After the filing of the original complaint, the following motions have been filed by plaintiff that remain pending before the court:  (1) Motion for Temporary Restraining Order, Record Doc. No. 8; (2) "Motion for Intervention by the United States Attorney General, Eric Holder," Record Doc. No. 9; (3) Motion for Leave to File Motion for Extraordinary Writ of Mandamus to Compel Attorney General Eric Holder to do His Duty Owed to Plaintiff, Record Doc. No. 11; and (4) Motion for Leave to File "Application for Under Color-of-Title Act," Record Doc. No. 12.  If the foregoing report and recommendation is accepted by the presiding district judge, it will be unnecessary to address any of these motions, which will be rendered moot by dismissal of the case as a whole.  Accordingly, for the reasons discussed above, plaintiff's pending motions should be DISMISSED AS MOOT, upon adoption of this report and recommendation.

**RECOMMENDATION**

For all of the foregoing reasons, **IT IS RECOMMENDED** that the federal claims in plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim and because he asserts claims against immune defendants under 28 U.S.C. § 1915(e)(2).

**IT IS FURTHER RECOMMENDED** that the state law claims in the complaint be **DISMISSED WITHOUT PREJUDICE** because this court lacks subject matter jurisdiction over plaintiff's claims.

**IT IS FURTHER RECOMMENDED** that plaintiff's (1) Motion for Temporary Restraining Order, Record Doc. No. 8; (2) "Motion for Intervention by the United States Attorney General, Eric Holder," Record Doc. No. 9; (3) Motion for Leave to File Motion for Extraordinary Writ of Mandamus to Compel Attorney General Eric Holder to do His Duty Owed to Plaintiff, Record Doc. No. 11; and (4) Motion for Leave to File "Application for Under Color-of-Title Act," Record Doc. No. 12, be **DISMISSED AS MOOT**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[3]

New Orleans, Louisiana, this ___10th___ day of October, 2014.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[3] Douglass referred to the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.